

**GARY M. BOWMAN**
**ATTORNEY AT LAW**

COLONIAL HILLS OFFICE BUILDING
2728 COLONIAL AVENUE
ROANOKE, VIRGINIA 24015
TEL: (540)343-1173  FAX: (540) 343-1157
EMAIL: gary@garymbowman.com
www.garymbowman.com

March 23, 2012

The Honorable Eugene C. Wingfield
Clerk, Lynchburg Circuit Court
900 Court Street
Lynchburg  VA  24505

　　　　Re: Karen M. Foster, Chapter 11 Case No. 12-60619, United
States Bankruptcy Court for the Western District of Virginia,
Lynchburg Division

Dear Mr. Wingfield:

　　　　I represent Karen M. Foster in Chapter 11 Bankruptcy Case No. 12-60619 in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division. Ms. Foster is the debtor-in-possession of her Chapter 11 bankruptcy pursuant to the order attached as Exhibit A.

　　　　Ms. Foster has posted a $20,000.00 bond in your Court relating to the cases Karen Foster v. Peter Sackett, et al., CL 10004795-00 and John L. Wynne v. Karen Foster, CL100005362-00. The bond is property of the bankruptcy estate and must be turned over to Ms. Foster to be deposited in the Debtor-in-Possession bank account. I have attached at Exhibit B a copy of <u>Speth v. Postel</u>, a decision by the United States Bankruptcy Court for the District of Kansas which is identical to Ms. Foster's situation and in which the Court ordered the state court bond to be turned over to the bankruptcy estate (the opinion is published at 424 B.R. 470 (Bankr. D. Kan. 2010)). Also attached is an article describing a Kentucky decision in which a bankruptcy court, applying a different theory, required turnover of the state court bond to a Chapter 11 debtor-in-possession (Exhibit C). As far as I know, there is no colorable theory that would preclude turnover of the bond to the bankruptcy estate under current bankruptcy law.

　　　　Please make the $20,000.00 available to Ms. Foster or to me, on Ms. Foster's behalf. If you have any questions or comments, please let me know as soon as possible.

Sincerely,

Gary M. Bowman

GMB:gb

Encl

The Honorable Eugene C. Wingfield
March 23, 2012
Page Two

―――――――――――――――――――

cc:    Richard P. Cunningham, Esq.

## UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| In re: KAREN M FOSTER | CASE NO. 12-60619 |
| Debtor(s) | CHAPTER 11 |

### DEBTOR-IN-POSSESSION ORDER

Pursuant to debtor's petition filed under Chapter 11, it is

### O R D E R E D:

That pending further order of this Court, debtor shall operate its business as debtor in possession with powers, rights and duties of a trustee under 11 U.S.C. Section 1107, conditioned as follows:

1. Debtor shall not pay any pre-petition debt may employ, discharge and fix salaries of all employees; but officers' and directors' salaries shall be reported by the debtor in possession in writing within ten (10) days of entry of this order to the office of the U.S. Trustee and to the creditors' committee designated in this case and absent any    written objection and request for hearing by the U. S. Trustee   or the creditors' committee within fourteen (14) days after the convening of the Section 341 meeting of creditors, said salaries shall be fixed; shall not, without, court approval, use "cash collateral" as defined in 11 U.S.C. Section 363 (a) unless the secured party consents; shall not sell property of the estate other than in the ordinary course of business except with court approval; may obtain unsecured credit in the ordinary course of business; may not obtain secured, priority or senior lien credit without court approval under 11 U.S.C. Section 364; and shall maintain adequate insurance on the property of the estate and make timely payment of any and all premiums thereon.

2. Debtor shall close its current books and open new   books of account showing all earnings, expenses, receipts and disbursements commencing with the date of the petition; shall segregate on its books all taxes collected or withheld whether federal, state or local; shall close all bank accounts currently maintained and open two new bank accounts, a Debtor in Possession "Operating Account" and a Debtor in Possession "Tax Account". Debtor shall deposit in the tax account all funds required to be escrowed under state or federal law, to be disbursed only for the purpose for which they are set aside.  All federal payroll taxes (e.g. FICA, FUCA) shall be deposited each time a payroll is made; and Debtor shall notify: Chief, Technical Section, Internal Revenue Service, P. O. Box 10025, Richmond, Virginia 23240 of the date, place, amount of each deposit and whether it is the entire amount due and promptly prepare and file all tax returns required by law. Debtor shall follow all guidelines, regulations and directives of the Office of the United States Trustee pertaining to Chapter 11 cases including, but not limited to, payment of the required quarterly fees.

3. Failure by debtor to comply with the terms, conditions and provisions of this order may require debtor to appear before this court for a hearing relative to the further administration of debtor's case, or for debtor to show cause why a trustee should not be appointed, or the debtor's case should not be converted to Chapter 7 or dismissed: and it is

### FURTHER ORDERED:

That within fourteen (14) days after the entry of this order, counsel shall file with this court a report disclosing counsel's fee arrangement with debtor, the amount of the retainer received, if any, the disposition of the same, and comply with the provisions of 11 U.S.C. Section 327, et seq. and Bankruptcy Rule 2014. Failure of counsel to  comply with the foregoing may result in disallowance of attorney's fees. Upon review by this court of counsel's filings and barring any written objection to counsel's employment and a request for hearing thereon, counsel of record shall continue, until further order of court, as counsel for the debtor in possession.

Service of a copy of this order shall be made by mail to debtor, counsel for debtor, and the United States Trustee.

DATED: 3/16/12

_____
### WILLIAM E. ANDERSON, JUDGE

odipa frm



**EXHIBIT**

A

**SO ORDERED.**

**SIGNED this 03 day of February, 2010.**

Dale L. Somers

Dale L. Somers
UNITED STATES BANKRUPTCY JUDGE

---

OPINION DESIGNATED FOR ON-LINE USE AND FOR PRINT PUBLICATION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **In Re:** | |
| | |
| **LEIGH ANN KOKSAL,** | **CASE NO.  09-10146** |
| a/k/a Uncommon Market, LLC | **CHAPTER 7** |
| a/k/a 46 UncommonMarket.com, | |
| | |
| **DEBTOR.** | |
| | |
| **STEVEN L. SPETH, Trustee,** | |
| | |
| **PLAINTIFF,** | |
| | |
| **v.** | **ADV. NO. 09-5079** |
| | |
| **JAMIE LYNN POSTEL and** | |
| **BERNIE LUMBRERAS, solely in her** | |
| capacity as Clerk of the Eighteenth | |
| Judicial District Court, Sedgwick County, | |
| Kansas, | |
| | |
| **DEFENDANTS.** | |

**EXHIBIT**

**B**

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT JAMIE LYNN POSTEL'S
## MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNT I
## AND DENYING THE MOTION AS TO COUNTS II AND III.

The matter under advisement is Jamie Lynn Postel's Motion for Judgment on the Pleadings, Pursuant to Rule 7012(b) (hereafter "Motion").[1] The Plaintiff Trustee, Steven Speth, appears by Timothy J. King, of Speth & King. Defendant Jamie Lynn Postel (hereafter "Postel") appears by Joseph H. Cassell and Nicholas R. Grillot of Redmond & Nazar, L.L.P. There are no other appearances.

Debtor's petition for relief under Chapter 7 was filed on January 26, 2009. The Trustee filed this adversary proceeding on May 7, 2009.[2] The amended complaint was filed with leave of Court on August 1, 2009, against Defendants Postel and Bernie Lumbreras, in her capacity as Clerk of the District Court of Sedgwick County, Kansas. The Chapter 7 Trustee seeks to recover for the estate a cash bond filed on May 14, 2007, in the amount of $125,000 in the office of the Clerk of the District Court of Sedgwick County, Kansas, in the matter of *Jamie Lynn Postel v. Leigh Ann Koksal*, Case No. 07-CV-0071. In the Amended Complaint, the Trustee alleges that the bond is property of the estate under 11 U.S.C. § 541. In Count I, he asserts that Postel has no rights in or to the cash bond, in Count II he alleges that the clerk should turnover the bond pursuant to 11 U.S.C. § 543, and in Count III he alleges, in the alternative, if the cash bond is not

---

[1] Doc. 36.

[2] By Memorandum Opinion and Order Denying Defendants' Motions to Dismiss, filed on September 14, 2009, the Court denied the motions of Postel and Bernie Lumbreras, in her capacity as Clerk of the Sedgwick County, Kansas District to dismiss. Doc. 32.

2

property of the estate and became property of Postel, that the transfer to Postel was preferential

under 11 U.S.C. § 547.  The Court has jurisdiction.[3]

On September 24, 2009, Postel filed her Motion.  She contends that she is entitled to

judgment based upon the face of the pleadings, comprised of the amended complaint[4] and

Postel's answer, to which certified copies of relevant state court pleadings are attached.[5]

According to Postel, this record establishes that the Debtor had no interest in the bond on the

date of filing.  The Trustee responds that the Motion should be denied because factual issues

remain as to the conditions of the bond and what motions are required in state court for its

disbursement.

**FINDINGS OF FACT.**

In June, 2002, Debtor and Postel entered into a nonexclusive licensing agreement for

Debtor to market Postel's artwork.  After problems arose, Postel terminated the arrangement.  On

April 11, 2005, Postel sued Debtor in Richland County, Ohio Court of Common Pleas for

copyright infringement, fraud, and conversion.  The trial court granted a default judgment on

September 14, 2005.  Debtor did not appear at the damage hearing, and a judgment of $506,000

---

[3] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the
Standing Order of the United States District Court for the District of Kansas that exercised authority
conferred by § 157(a) to refer to the District's Bankruptcy judges all matters under the Bankruptcy Code
and all proceedings arising under the Code or arising in or related to a case under the Code, effective July
10, 1984.  A complaint to determine property of the estate, for turnover of property to the estate, and to
recover preferential transfers is a core proceeding which this Court may hear and determine as provided in
28 U.S.C. § 157(b)(2)(A), (E), and (F).  There is no objection to venue or jurisdiction over the parties.

[4] Doc. 27.

[5] Doc. 35.

3

was recommended.  The trial court adopted the recommendation in a judgment filed on June 16, 2006.[6]

On January 5, 2007, counsel for Postel filed an Affidavit of Foreign Judgment in the District Court of Sedgwick County, Kansas.  The matter was assigned Case No. 07CV0071.[7]  A certified copy of the Ohio Judgment Entry on Magistrate Decision in a Civil Case was attached to the affidavit.[8]  On May 10, 2007, in Case no. 07CV0071 the Kansas district court heard the Debtor's motion for protective order and to quash deposition, and for a stay of proceedings.[9] The order dated May 14, 2007, includes the following findings: That Debtor's only non-exempt assets were slightly more that $131,000 cash; that the cash would be subject to execution by Postel but for a stay ordered by the Kansas court; that it was likely that the Ohio court within 60 to 90 days would rule on the rule 60(b) motion, which had been filed by Debtor on April 14, 2007, in the Ohio court to vacate the Ohio judgment;[10] that the Debtor's motions for protective order and to quash subpoena and for stay would be granted provided that Debtor post a cash bond pursuant to K.S.A. 60-3004(b); that enforcement of Postel's foreign judgment would be stayed pending posting of such cash bond, and should the bond be posted, thereafter until further order of this court; that if Debtor should fail to post the cash bond, execution should issue forthwith; that if the Ohio court has not ruled on Debtor's motion to vacate the default judgment

_____

[6] *See* Doc. 35-2.

[7] Doc. 11-2.

[8] Doc. 11-1.

[9] Doc. 35-3.

[10] Doc. 35-2.

4

within 90 days, the parties may appear for further proceedings; and if the Ohio court vacated

Postel's default judgment within the 90 days, Debtor's cash bond shall be subject to exoneration

upon motion and order by the court.[11]  A Supersedeas Bond (hereafter "Bond") was filed in May

14, 2007.  It recites that, pursuant to the court's order and K.S.A. 60-3004(b), Debtor tenders and

deposits $125,000 Cash Bond for the benefit of Postel.  As to the conditions, the Bond states:

> The condition of the above obligation is such by virtue of the order
> of this court entered the 14th day of May, 2007, pursuant to
> defendant's motion for protective order and to quash deposition
> and motion for stay of execution proceedings, as a result of the
> entry of the judgment on January 18, 2007 in favor of plaintiff and
> against defendant in the amount of $509,495.00.

Debtor's rule 60(b) motion was denied by the Ohio court on December 28, 2007, and a notice of

appeal to the Court of Appeal for Richmond County, Ohio was filed on January 7, 2008.[12]  On

January 11, 2008, Postel filed in the District Court of Sedgwick County a motion to transfer

supersedeas bond from the clerk of the Sedgwick County District Court to the clerk of Court of

Common Pleas of Richmond County, Ohio.[13]  The motion was denied.  The court ruled in part:

> . . . the bond currently posted by Defendant and the corresponding
> Protective Order in this Court shall continue through the appeals
> process (as long as both the Ohio trial Court and appellant court do
> not deny defendant's Application/Motion for a stay in Ohio) and
> shall not be released to either party until the appeal process is
> exhausted at which time the Court will address the appropriate
> motions by the parties for the dispensation of the held funds.[14]

---

[11] *Id.*

[12] Doc. 41-1.

[13] *Id.*

[14] Doc. 41-2.

5

The Court of Appeal for Richland County, Ohio Fifth Appellate District affirmed the judgment on January 16, 2009.  Thereafter, Debtor had 45 days to seek discretionary review by the Ohio Supreme Court.[15]  Debtor filed for relief under Chapter 7 on January 26, 2009, before expiration of the time to seek review, and the record contains no evidence that timely review has been sought.  The judgment of Postel against Debtor is a final judgment.

**ANALYSIS.**

**A.  Postel's contentions.**

Defendant Postel seeks a judgment on the pleadings based upon the following contentions: That as of the date of filing, Debtor had no interest in the Cash Bond such that it is not included in the estate under 11 U.S.C. § 541; that there is no basis for turnover from a custodian under 11 U.S.C. § 542; and that the Trustee has waived his preference claim.  The Trustee responds that whether his complaint should be dismissed cannot be determined based upon the pleadings because the Kansas district court has not issued any orders regarding distribution of the Cash Bond, and such orders will go to the ultimate issue of the Debtor's ownership of the Cash bond.

**B.  On the Date of Filing, the Estate had a contingent interest in the Cash Bond.**

Resolving the differences between the positions of the parties requires the Court to first address the question of the estate's interest in the Cash Bond under § 541.  That section defines property of the estate as comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."  Congress has generally left the determination of property

---

[15] Ohio S. Ct. Pract. R II,  § 1(A)(3) and § 2 (A)(1)(a).

6

rights in the assets of a bankrupt's estate to state law.[16] "Thus, whatever rights a debtor has in property at the commencement of the case continue in bankruptcy-no more, no less.  Section 541 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case.' "[17]  Section 541 includes contingent interests, such as interests the right to which might be finalized post-petition.[18]

The Court therefore looks to Kansas law to determine the estate's interest in the Cash Bond.  The Bond was ordered pursuant to K.S.A. 60-3004(b) as a condition for stay of enforcement of the Ohio judgment following its registration in Sedgwick County District Court. That statute provides that the "Court shall stay enforcement of the foreign judgment for an appropriate period, upon requiring the same security for satisfaction of the judgment which is required in this state subject to the provisions of subsection (d) of K.S.A. 60-2103... ."  The later statute, which addresses appellate practice, provides that when an appellant desires a stay on appeal, the appellant may present to the district court for its approval a supersedeas bond "conditioned for the satisfaction of the judgment in full together with costs, interest, and damages for delay, ..."  Hence, in Kansas, as in other jurisdictions, a supersedeas bond provides security in the event the judgment whose effectiveness is set aside during an appeal is later affirmed; it protects the creditor's ability to collect the judgment, if the judgment is affirmed.[19] Although K.S.A. 60-2103 reads as if a bond supporting a stay of execution must have a surety, it

---

[16] *Butner v. U.S.*, 440 U.S. 48, 54 (1979).

[17] *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1213 (7th Cir. 1984), quoting H.R. Rep. No. 595, 95th Cong., 1st Sess., *reprinted in* 1978 U.S. Code Cong. & Ad. News 5787.

[18] *Williamson v. Jones (In re Montgomery)*, 224 F.3d 1193, 1195 (10th Cir. 2000).

[19] *See* 4 C.J.S. Appeal and Error §§ 518 and 531.

7

is common practice for the judgment debtor to provide a bond secured in a different manner, such as by a letter of credit, property, or cash.

The case law concerning the interest of a judgment debtor's bankruptcy estate in a supersedeas bond posted prepetition during the pendency of an appeal has arisen in many different procedural and factual contexts. One of the early and often cited cases is *Mid-Jersey National Bank*,[20] decided in 1975 and controlled by the Bankruptcy Act of 1898. In that case, summary judgment was entered against a borrower who appealed and posted a certificate of deposit in lieu of a supersedeas bond. The borrower filed for relief under the Bankruptcy Act while the appeal was pending. The question was whether relief from stay was required for the appeal to continue. Because under the Act the bankruptcy stay applied only to proceedings which could divest the debtor of property over which the bankruptcy proceedings had jurisdiction, the court defined the question as whether the certificate of deposit is property of the debtor subject to the exclusive jurisdiction of the bankruptcy court. The court held that the bond was not property of the borrower's bankruptcy estate but was a trust fund held in *custodia legis* by the district court that rendered the judgment. The Tenth Circuit has not addressed the issue of rights in a supersedeas bond when the judgment debtor who posted the bond files for bankruptcy relief during the appeal.[21]

---

[20] *Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors*, 518 F.2d 640 (3rd Cir. 1975).

[21] The Tenth Circuit in *Grubb v. Federal Deposit Ins. Corp.*, 833 F.2d 222 (10th Cir. 1988), a case concerning the insolvency of a national bank, found *Mid-Jersey* highly persuasive, and held that a judgment debtor by agreeing to a bond and depositing a certificate of deposit with the clerk "in essence transformed the underlying unsecured debt [the judgment] into a secured debt by agreeing that the bond would . . . secure payment of 'all judgments, orders and accruals thereon." *Id.*, 833 F.2d at 226. The certificate could therefore not be recovered by the receiver as an asset of the bank.

8

*Mid-Jersey* was followed in *Carter Baron Drilling*,[22] an opinion of the Colorado District

Court controlled by the Code.  Postel relies on *Carter Baron Drilling*.  In that case, a judgment

was entered in favor of Badger against National, and National deposited a cashier's check with

the clerk, who cashed the check and treated the funds as a supersedeas bond.  National filed for

bankruptcy relief in December, 1985.  Postpetition the judgment was affirmed by the Tenth

Circuit.  Baron sought turnover of the bond from the court in which the judgment had been

rendered and the bond posted.  In defense, National contended turnover should not be ordered

because the cash bond was part of the bankruptcy estate.  The court found the case similar to

*Mid-Jersey* and ruled the funds held by the court in *custodias legis* as a supersedeas bond were

not an asset or property of National's estate.  But it also noted that the "only possible interest

retained by a judgment debtor in such funds is, therefore, a contingent reversionary interest

based upon the possibility that the trial court's judgment would be reversed on appeal"[23] and that

any contingent reversionary interest National had to the funds terminated when the Tenth Circuit

affirmed the judgment against National. [24]

---

[22] *Carter Baron Drilling v. Excel Energy Corp.*, 76 B.R. 172 (D.  Colo. 1987).

[23] *Id.*, 76 B.R. at 174.

[24] Other decisions controlled by the Code have followed *Mid-Jersey*, but they involved factual
circumstances different from this case.  For example, in *Moran v. Johns-Manville Sales Corp.*, 28 B.R.
376 (D.N.D. Ohio 1983) the issue was whether after a judgment against the debtor was affirmed the stay
of § 362 barred a plaintiff from recovery of her judgment against the debtor by enforcement of the bond
posted by a commercial surety.  The court held it did not, since the bond was not property of the estate.
Recovery was sought after the judgment was affirmed, and the liability to be enforced was against a
commercial surety, not cash deposited by the Debtor.  In *Gnidovec v. Alwan (In re Alwan Bros. Co.,
Inc.)*, 105 B.R. 886 (Bankr. C.D. Ill. 1989) the court found *Mid-Jersey* to be both persuasive and
controlling, but then held the bond in the form of real property was excluded from the estate only in part,
the extent needed to satisfy a compensatory judgment claim.

9

The Trustee relies upon *Celotex*,[25] a case arising under the Code but where the supersedeas bond was posted by a commercial surety. The bankruptcy court had previously lifted the stay to allow appeals of personal injury claims against the debtor to proceed. A remaining issue before the court was whether the supersedeas bonds issued by commercial sureties posted by the debtor to obtain stays pending appeals were property of the bankruptcy estate subject to the automatic stay and therefore not available to the plaintiffs if their cases were affirmed. The court held that if at the time of filing the petition the appellate process had not been concluded, the debtor still had an interest in the supersedeas bond for purposes of § 541, subject to the interest being divested if the debtor was unsuccessful once the appellate process is completed.[26] This conclusion was supported by the desirable result that the bond be protected by the stay during the appellate process and as providing a rationale basis for the estate's acquisition of property if any of the bonds were released during the bankruptcy because a judgment was reversed. The holding of *Mid-Jersey* was distinguished based upon the fact that it was decided before enactment of the Code with its more expansive definition of property of the estate and automatic stay.

This Court finds the reasoning of the *Celotex* court persuasive. This Court declines to follow *Mid-Jersey* and *Carter Baron Drilling* for three reasons. First, *Mid-Jersey* arose before enactment of the Code and the issue before the court was whether the limited stay then codified, which had the purpose of preventing a creditor from defeating the jurisdiction of the bankruptcy court over the debtor's property, precluded considering the merits of the appeal. The Third

---

[25] *In re Celotex*, 128 B.R. 478 (Bankr. M.D. Fla. 1991).

[26] *Id.*, 128 B.R. at 482,

Circuit has held that *Mid-Jersey's* analysis of the automatic stay is inapplicable to the Code,[27]

and  several courts have questioned the validity of its analysis of property of the estate.[28]  Under

the Code, the fact that a debtor's property is in *custodias legis* does not remove it from the

bankruptcy estate.[29]  Because of its reliance on *Mid-Jersey*, the Court declines to adopt the

holding of *Carter Baron Drilling*, but does note that the opinion recognized that a bankruptcy

estate may have a contingent interest in a bond posted by the debtor if bankruptcy relief is sought

before the appeal is resolved.  Second, the effect of bankruptcy on a bond posted by a debtor

arose *in Carter Baron Drilling*, as it did in *Mid-Jersey*, not in the bankruptcy court but in the

court which had required the bond and in whose registry the bond was held.  The question

presented in both cases was whether the bond should be released to the judgment creditor after

affirmance of the judgment.  That is not the issue before this Court.  Here the question is not

whether the cash bond should be distributed to Postel, but whether Debtor had an interest in the

Cash Bond on the date of filing.  Third, neither *Mid-Jersey* nor *Carter Baron Drilling* expressly

relied upon the terms of the bond and the related orders of the court approving the bond when

analyzing the property interests of the debtor.

     As stated above, property interests under § 541 are determined by reference to state law.

Examination of the state law property interests in the Cash Bond show that Debtor had

contingent interest on the date of filing.  In this case, the District Court of Sedgwick County

---

[27] *Borman v. Raymark Industries, Inc.*, 946 F.2d 1031, 1035 (3rd Cir. 1991)

[28] *See Id.*, 946 F.2d at 1034 (discussing cases questioning *Mid-Jersey*'s analysis of the
estate).

[29] *See In re Alternate Fuels, Inc.*,2009 WL 1298447 (Case no. 09-20173, Bankr. D. Kan. May 8,
2009).

11

when approving the Bond as a condition for staying execution of the Ohio judgment held that the

bond would be subject to exoneration upon motion and order of the court if the default judgment

was not vacated within the time limits set by the court.  Later, when there was an appeal to the

Ohio Court of Appeals, the court held that the bond "shall not be released to either party until the

appeal process is exhausted at which time the Court will address the appropriate motions by the

parties for the dispensation of the held funds."[30]  These orders clearly recognize that the Debtor

had a contingent interest in the bond on the date of filing, when the appeal process was not

complete.

    The Court therefore holds that the Debtor had an interest in the Cash Bond on the date of

filing, subject to being divested if the judgment of the Ohio court in favor of Postel was affirmed.

On the date of filing, the appellate process was almost complete.  The Court of Appeals had

affirmed, but the Debtor still had a right to seek review by the Ohio Supreme Court.  Under the

orders of the Sedgwick County District Court, Debtor had a contingent right to "dispensation of

the funds" until the appeal process was complete.  When the bankruptcy was filed, the Debtor's

rights were transferred to the estate.  The Motion to dismiss is denied as to the assertion that the

estate had no interest in the bond on the date of filing.

**C.  The estate's interest in the Cash Bond is subject to the terms of the Bond as established
by the orders of the Sedgwick County District Court, and that court, not this Court, is the
proper forum to determine the estate's interest.**

    The time for Debtor to file for review of the Ohio court of appeal's affirmance of the

judgment has now expired.  It is tempting for this Court to hold that forfeiture of the estate's

contingent interest in Cash Bond has occurred, since the amount deposited is less than the

---

[30] Doc. 41-2, p.3.

12

amount of the judgment. However, the Court declines to make such a ruling. As stated in the

order of the Sedgwick County District Court,

> . . . the bond currently posted by Defendant and the corresponding
> Protective Order in this Court shall continue through the appeals
> process (as long as both the Ohio trial Court and appellant court do
> not deny defendant's Application/Motion for stay in Ohio) and
> shall not be released to either party until the appeal process is
> exhausted at which time the Court will address the appropriate
> motions by the parties for the dispensation of the held funds.[31]

The District Court of Sedgwick County is the proper forum to address the "appropriate motions

by the parties for the dispensation" of the held funds.

Since the estate's interest in the Cash Bond is property of the estate, § 362(a)(3) applies.

It precludes "any act to obtain property of the estate or of property from the estate or to exercise

control over property of the estate." The Court therefore requests a party in interest to move for

relief from stay to allow all proceedings as required under the terms of the Bond, the orders of

the District Court of Sedgwick County, and Kansas law to determine the interests of the parties

to the Cash Bond.

**D. The Court grants Motion as to Count I of the Amended Complaint.**

As stated above, in the amended complaint, the Trustee alleges three counts. Count I

prays for a finding that Postel has no interest in the bond. As stated above, the Court rules based

upon the pleadings that the estate had a property interest in the Cash Bond on the date of filing.

However, the estate did not have all rights to the Cash Bond to the exclusion of Postel. For the

same reasons that the estate had a contingent interest, the pleadings demonstrate that Postel also

had a contingent interest in the Cash Bond on the date of filing. Under the orders of the District

---

[31] Doc. 41-2.

13

Court of Sedgwick County if the judgment was affirmed, Postel was required to file a motion

praying for an order that the Cash Bond be released to her.  The Trustee's claim asserted in

Count I that Postel had no interest in the Cash Bond on the date of filing is denied.

### E. The Motion is denied as to Count II of the Amended Complaint.

Count II is for turnover of the Cash Bond pursuant to § 543, turnover of property by a

custodian.  The pleadings are insufficient to determine whether any portion of the Cash Bond

should be turned over to the Trustee by the Clerk of the District Court.  Until the District Court

of Sedgwick County rules on the interests of the parties to the Cash Bond, the amount of funds,

if any, to which the estate is entitled is not known.

### F.  The Motion is denied as to Count III of the Amended Complaint.

Count III is for recovery of a preference to the extent the Cash Bond became property of

Postel.  In the Motion, Postel asserts this count should be dismissed because the Trustee has

waived the claim, based upon his responses to Postel's memoranda.  The Court finds that the

actions of the Trustee relied upon by Postel are insufficient to establish waiver.

### CONCLUSION.

For the foregoing reasons, the Court grants Postel's Motion as to Count I and denies the

Motion as to Counts II and III.  As to Count I, on the date of filing, both the Debtor and Postel

had contingent interests in the Cash Bond.  Whether the estate's contingent interest has been

forfeited because the Ohio judgment has been affirmed and no more appeals are permitted is a

matter that should be determined by the Sedgwick County District Court, after relief from stay is

granted pursuant to a motion to be filed by a party in interest.  The Motion is denied as to Count

II since the pleadings are insufficient for a determination of whether the estate has a right to a

14

portion of the Cash Bond which should be turned over by the Clerk of the District Court.  The

Motion is denied as to Court III because the pleadings do not establish that the Trustee has

waived his preference claim.

The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and

9014©) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal

Rules of Civil Procedure applicable to this matter.  A judgment based upon this ruling will be

entered on a separate document as required by Federal Rule of Bankruptcy Procedure 9021 and

Federal Rule of Civil Procedure 58.

**IT IS SO ORDERED.**

###

15





**EXHIBIT**

C

## BY-LINED ARTICLE
## Court Avoids Debtor's Payment of a Supersedeas Bond as a Preference

By Rudolph J. Di Massa Jr. and Matthew E. Hoffman

March 9, 2007

*The Legal Intelligencer*

In *In re Thermoview Indus. Inc.*, the U.S. Bankruptcy Court for the Western District of Kentucky had to decide whether to avoid a Chapter 11 debtor's payment of a supersedeas bond to stay enforcement of a creditor's judgment against the debtor pending appeal. The court concluded that this transfer satisfied every element of a preferential transfer and did not fall under any defenses, granting the debtor's motion for summary judgment and avoiding the transfer.

### Background

On or about July 11, 2005, defendant Nelson E. Clemmens obtained a judgment in the amount of $225,000 against Thermoview Industries Inc. in Kentucky state court. Thermoview filed a notice of appeal with the Kentucky Court of Appeals, which appeal was pending as of the issuance of this opinion. On July 27, 2005, Thermoview transferred $300,000 to the Westchester Fire Insurance Company in order to obtain a supersedeas bond, the purpose of which was to stay enforcement of the judgment by Clemmens pending Thermoview's appeal.

On Sept. 26, 2005, Thermoview filed a voluntary petition for relief under Chapter 11 of Title 11 of the U.S. Bankruptcy Code, and became a debtor-in-possession at that time. On June 22, 2006, Thermoview instituted an adversary proceeding against Clemmens, alleging that the transfer of the $300,000 to obtain the bond constituted a preferential transfer under 11 U.S.C. Section 547 of the Bankruptcy Code.

Thermoview asserted the following: that this preferential transfer should be avoided; that the bond should be set aside and voided; and that the $300,000 should be returned to Thermoview. Pursuant to Fed. R. Bankr. P. 7056, incorporating Fed. R. Civ. P. 56, Thermoview filed a motion for summary judgment.

### Court's Analysis

The court began by examining the standard for summary judgment under Fed. R. Bankr. P. 7056 and Fed. R. Civ. P. 56: Summary judgment is appropriate only where no genuine issue of material fact remains to be decided such that the movant is entitled to judgment as a matter of law. The burden of proof lies initially with the movant, which must demonstrate the basis of its motion for summary judgment and point out the portions of the record that demonstrate the lack of a genuine issue of material fact. Once the movant meets this burden, the nonmoving party must then point to specific facts that demonstrate the existence of a genuine issue of material fact upon which the nonmoving party will bear the burden of proof at trial.

Turning next to the substantive issue, the court looked to Section 547 of the Bankruptcy Code, which enumerates the elements of a preferential transfer, which follow. A preferential transfer is a pre-petition transfer of an interest of the debtor in property:

- to or for the benefit of a creditor;

- for or on account of an antecedent debt owed by the debtor before such transfer was made;

- made while the debtor was insolvent;

- made either on or within 90 days before the filing of the petition, or between 90 days and one year before the filing of the petition, if the transfer is made to or for the benefit of an "insider" of the debtor; and

- that enables the creditor to receive more than it would have received upon the liquidation of the debtor under Chapter 7 of the Bankruptcy Code.

Duane Morris LLP - Court Avoids Debtor's Payment of a Supersedas...   http://www.duanemorris.com/printPreview?url=http://www.duanem

The court first looked to whether an "interest of the debtor" was transferred when Thermoview paid $300,000 to Westchester to obtain the bond. Recognizing disagreement among the courts as to whether a bankruptcy estate obtains an interest in a supersedeas bond or its proceeds, the court found that because the appellate process had not been concluded, Thermoview still had an "interest" in the bond under Section 541, concerning property of the estate. Simplifying the inquiry, the court found that because the transfer of the $300,000 depleted Thermoview's estate by reducing the quantity of funds it held, the transfer to Westchester qualified as a transfer of an interest of the debtor.

Next, the court looked to whether this transfer was to or for the benefit of a creditor. The court found that while Westchester was not a creditor at the time of the transfer, the transfer of the $300,000 was made for the indirect benefit of Clemmens, as obtaining the bond assured payment in full of Clemmens's debt pursuant to the judgment should Clemmens be successful on appeal. The court then found that because the judgment preceded the date of the transfer of funds by Thermoview for purchase and placement of the bond, the transfer was on account of an antecedent debt of the debtor.

The court next looked to Section 547(f), noting the presumption of insolvency of a debtor within the 90 days immediately preceding the date of the filing of the petition. While a creditor may rebut this presumption, Clemmens introduced no evidence to do so, and the court found that Thermoview was insolvent at the time of the transfer. As to the final element of a preferential transfer (i.e., that the transfer enable the creditor to receive more than it would have received in a liquidation under Chapter 7), the court found that the transfer to Westchester had the effect of dramatically improving Clemmens's status from that of an unsecured creditor to that of a secured creditor.

As to the preferential nature of the transfer to Westchester, Clemmens asserted two defenses. First, Clemmens attempted to set forth a "new value" defense, which provides that a transfer is not preferential if: the defendant extended new value to the debtor; both the defendant and the debtor intended the new value and reciprocal transfer by the debtor to be contemporaneous; and the exchange was, in fact, contemporaneous. Clemmens argued that in exchange for the $300,000, Westchester took on a new obligation to pay Clemmens in the event Thermoview did not succeed on appeal, concluding that this resulted in new value to Thermoview given contemporaneously with Thermoview's transfer to Westchester.

The court disagreed, because while the transfer to Westchester indirectly benefited Clemmens, Clemmens did not give Thermoview anything of value in exchange for improving his status to that of a secured creditor.

Clemmens also argued for an application of the earmarking doctrine, which applies where a third party pays an antecedent debt of a debtor's creditors, and the funds used to pay the debt do not diminish the debtor's estate. Clemmens argued that Thermoview had no control over the funds, which were "earmarked" for a specific debt, relying on case law which the court ultimately found inapposite because, in those opinions: the creditors making the payments had independent obligations to pay the debtors' creditors; and the debtors had no control over the payments.

In this case, the court found that Westchester did not replace Clemmens as Thermoview's creditor, as would be the case in the typical earmarking scenario. Finding that the transfer diminished Thermoview's estate by $300,000, the court rejected Clemmens's earmarking defense.

The court concluded that the transfer of $300,000 from Thermoview to Westchester was a preferential transfer under Section 547, finding that the appropriate remedy was to avoid the transfer of the interest in the Bond to Clemmens. The court did so and granted summary judgment in favor of Thermoview.

Conclusion

The posting of a supersedeas bond is common in litigation, the policy being to protect the prevailing party that is stayed from execution on its judgment pending the outcome of the appeal. On the other hand, bankruptcy preference litigation is also common, and one policy of Section 547 of the Bankruptcy Code is the fair and equitable repayment of creditors. The facts of In re Thermoview Industries constitute a textbook example of the intersection of these policies and the tension between them. The court's opinion correctly provides that a judgment creditor, in whose favor a supersedeas bond has been issued, may still not be protected from the far-reaching effects of Section 547.

*Rudolph J. Di Massa, Jr., a partner at Duane Morris, is a member of the business reorganization and financial restructuring practice group. He concentrates his practice in the areas of commercial litigation and creditors' rights. He is a member of the American Bankruptcy Institute, the American Bar Association and its business law section, the Commercial Law League of America, the Pennsylvania Bar Association and the business law section of the Philadelphia Bar Association.*

*Matthew E. Hoffman is an associate with the firm and practices in the area of business reorganization and financial restructuring. Hoffman is admitted to practice in Pennsylvania and New Jersey.*

*This article originally appeared in The Legal Intelligencer and is republished here with permission from law.com.*