UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Lynchburg Division

| In re: | Chapter 11 |
| --- | --- |
| KAREN FOSTER, | Case No. 12-60619 |
| Debtor. | |
| JOHN L. WYNNE, | |
| Movant, | |
| v. | Motion for Relief From Stay |
| KAREN FOSTER, | |
| Debtor. | |

**VERIFIED**
**DEBTOR-IN-POSSESSION'S RESPONSE TO MOTION FOR RELIEF FROM STAY**

COMES NOW the debtor-in-possession, by counsel, who hereby responds to the Motion for Relief from Automatic Stay filed by John L. Wynne on the grounds stated herein.

I. ENUMERATED RESPONSE TO THE MOTION FOR RELIEF FROM STAY

1. The allegations of ¶1 of the Motion for Relief from Stay are admitted.

2. The allegations of ¶2 of the Motion for Relief from Stay are denied. Ms. Foster has not filed "eight previous bankruptcies" as alleged in the Motion for Relief from Stay.

3. The allegations of ¶3 of the Motion for Relief from Stay are admitted.

1

4. The allegations of ¶4 of the Motion for Relief from Stay are denied. Mr. Wynne did not make a loan on August 23, 2006 in the amount of $40,000.00. On August 23, 2006, Mr. Wynne did not loan Ms. Foster any money: he paid Ms. Foster $100.00 for feeding his horses (Check No. 8685) and he paid a parking ticket to City of Lynchburg (Check No. 8686) that had been placed on Mr. Wynne's car while Ms. Foster was driving it. Mr. Wynne apparently considered those payments a loan, but they were not a loan--they were his debts that he himself owed.[1]

5. The allegations of ¶5 of the Motion for Relief from Stay are admitted, but the Lynchburg City Circuit Court did not consider any matters that occurred prior the foreclosure sale on September 25, 2008. Specifically, the Lynchburg City Circuit Court in cases CL1004795-00 and CL10005362-00 did not consider whether Mr. Wynne did not loan $40,000.00 to Ms. Foster or whether the deed of trust and the subsequent foreclosure were fraudulent conveyances.

6. The allegations of ¶6 of the Motion for Relief from Stay are admitted.

7. The allegations of ¶7 of the Motion for Relief from Stay are admitted.

8. The allegations of ¶8 of the Motion for Relief from Stay are

---

[1] Wynne may not claim that the Deed of Trust secured advances of money to be made after August 23, 2006 because Va.Code § 55-58.2 specifically requires that such a deed of trust state, in conspicuous letters, "THIS IS A CREDIT LINE DEED OF TRUST," and the August 23, 2006 Deed of Trust did not contain such words.

2

admitted.

9. The allegations of ¶9 of the Motion for Relief from Stay are admitted.

10. The allegations of ¶10 of the Motion for Relief from Stay are admitted.

11. The allegations of ¶11 of the Motion for Relief from Stay are admitted.

12. The allegations of ¶12 of the Motion for Relief from Stay are admitted, but the Chapter 13 Trustee told Ms. Foster that she was not required to attend the meetings.

13. The allegations of ¶13 of the Motion for Relief from Stay are admitted.

14. The allegations of ¶14 of the Motion for Relief from Stay are admitted.

15. The allegations of ¶15 are denied.

(a) The movant's characterization of the "Debtor's Response to Motion for Relief from Stay" in Case No. 12-60080 is not accurate because the movant's statement that, "That is exactly what the parties litigated for two years" is not correct.

(b) Ms. Foster's pro se failure to list a claim against Mr. Wynne in Case No. 12-60080 does not constitute grounds for judicial estoppel because the elements of judicial estoppel are not pleaded in the Motion for Relief from Stay and Ms. Foster identified the grounds of her complaint against Wynne in the "Debtor's Response to Motion for Relief from Stay" filed on March 6, 2012, while Case No. 12-60080 was still pending.

16. The allegations of ¶16 are denied. The Chapter 13 Trustee did not make a comment on whether Ms. Foster made any "attempt" to comply with requirements.

17. The allegations of ¶17 are admitted.

18. The allegations of ¶18 are denied. Ms. Foster has paid the filing fee and filed all required schedules.

19. The allegations of ¶19 are denied. The "Claim to Recover Lot 13 Block A Evergree [sic] Subdivision" is not the same claim that Ms. Foster raised in Lynchburg Circuit Court.

20. The allegations of ¶20 are denied. The Lynchburg Circuit Court has not entered a final order and the Court did not address any factual matters that occurred before the foreclosure sale or whether the deed of trust or the foreclosure sale were fraudulent conveyances.

21. The allegations of ¶21 is denied to the extent that it implies that the bond, which is property of the estate held by a custodian, is not subject to turnover because of the timing that the custodian came into possession of the property.

22. The allegations of ¶22 are denied because Mr. Wynne does not have a valid claim to the property. The only claim he has to the property arises from his false claim that he loaned $40,000.00 to Karen Foster on August 23, 2006.

23. The allegations of ¶23 are irrelevent to the issues regarding relief from the automatic stay and Ms. Foster denies the movant's legal arguments.

24. The allegations of ¶24 are irrelevent to the issues

regarding relief from the automatic stay and Ms. Foster denies the movant's legal arguments.

25. The allegations of ¶25 that Ms. Foster has no business to reorganize are denied.

26. <u>THERE IS EQUITY IN THE PROPERTY:</u> The allegations of ¶26 that Ms. Foster has no equity in the 2232 Ridgewood Drive property are denied because the movant has no claim in the property that does not arise from his false claim that he loaned $40,000.00 to Karen Foster on August 23, 2006. The movant has claimed that the property is worth $200,000.00 and the movant's claim is for $40,000.00, leaving equity in the property of $163,000.00.

27. <u>THE PROPERTY IS NECESSARY FOR MS. FOSTER'S REORGANIZATION:</u> The allegations of ¶27 that the property at 2232 Ridgewood Drive is not necessary for Ms. Foster's effective reorganization are denied because it is Ms. Foster's home, she rents rooms in the house for $1000.00 per month, and the house is a substantial asset that should be recovered by the bankruptcy estate.

## II. EQUITABLE GROUNDS FOR DENYING THE MOTION FOR RELIEF FROM STAY

### A. THE DEED OF TRUST WAS A FRAUDULENT CONVEYANCE AND WAS CONCEALED BY BANKRUPTCY FRAUD.

28. This Court should deny the Motion for Relief from Stay because the August 23, 2006 Deed of Trust made in favor of Wynne was a fraudulent conveyance. The fraudulent Deed of Trust is the sole basis of Mr. Wynne's claim to possession of the property at 2232 Ridgewood Drive and possession of a $20,500.00 bond posted by Ms. Foster with the Clerk of the Circuit Court of the City of

Lynchburg.

29. Mr. Wynne has presented, throughout the state court litigation, and in the instant Motion for Relief from Stay, the fraudulent and false premise that he loaned Ms. Foster $40,000.00 on August 23, 2006. Specifically, the movant stated in ¶4 of the instant Motion for Relief from Stay that the Lynchburg Circuit Court "suits arose from a loan made on August 23, 2006 by Mr. Wynne to Ms. Foster which was evidenced by a $40,000.00 demand note and was secured by a second deed of trust on real property then owned by Ms. Foster located at 2232 Ridgewood Drive, Lynchburg VA." In fact, Mr. Wynne loaned Ms. Foster no money on August 23, 2006.

30. Ms. Foster has consistently claimed that Wynne did not loan her $40,000.00 on August 23, 2006. She first learned on September 12, 2008 that Peter Sackett had scheduled a foreclosure sale of her property for September 25, 2008. Ms. Foster, acting pro se, filed Case No. CL08-002958-001 in Lynchburg Circuit Court to enjoin the September 25, 2008 foreclosure sale. A hearing was held on September 24, 2008. At the hearing, Ms. Foster said that Mr. Wynne did not loan her $40,000.00 and she demanded an accounting of the money that Wynne claimed was due under the note. The Court denied the motion for an injunction, but told Peter Sackett to provide her an accounting of the money due under the note. Mr. Sackett did not provide the accounting, but conducted the foreclosure sale the next day. Subsequent litigation between Ms. Foster, Wynne, and Sackett involved only

events that occurred after the foreclosure sale, not the amount due under the note.

31. The transfer of the Deed of Trust to Wynne was a fraudulent conveyance.

    (a) The Deed of Trust was a void transfer pursuant to Va.Code § 55-81.

        (1) The Deed of Trust was a transfer from Ms. Foster to Wynne of an interest in her property; and

        (2) Ms. Foster was insolvent at the time or was rendered insolvent by the transfer of the equity in her home;

        (3) The consideration for the transfer of the Deed of Trust ($0.00) was not of equal value to the property obtained by Wynne in the transfer ($40,000.00).

    (b) The Deed of Trust to Wynne was a void transfer pursuant to 11 U.S.C. § 548.

        (1) The Deed of Trust was made within two years prior to the filing of Ms. Foster's Chapter 7 Case No. 07-61731;

        (2) Ms. Foster received less than reasonably equivalent value for the transfer of the Deed of Trust ($0.00) and she did not receive equal value to the property obtained by Wynne in the transfer ($40,000.00); and

        (3) Ms. Foster was insolvent at the time or was rendered insolvent by the transfer of the equity in her home.

32. The fraudulent conveyance was concealed by Wynne's fraud. Ms. Foster filed Chapter 7 Case No. 07-61731 on September 14, 2007. Andrew S. Goldstein was appointed Trustee in the case. On

April 3, 2008, Wynne filed a letter with the Clerk of this Court, with a copy to Mr. Goldstein, purporting to be a Proof of Claim in Case No. 07-61731. The letter stated: "I am submitting a <u>Proof of Claim</u> supported by an itemization of charges and a schedule of loans to [Ms. Foster]" (underlining in original). The letter claimed a "$40,000 note executed by Ms [sic] Foster secured by a recorded Deed of Trust on 2232 RidgeWood DR. [sic] Lynchburg RE: schedule (A). Amount due $45,916.00." Wynne attached a document entitled "Schedule A" that showed that Wynne charged Foster 8% interest from August 23, 2006, and showed a total claim of "$45,315," even though Wynne had not loaned Foster $40,000.00 on August 23, 2006. Upon information and belief, Mr. Goldstein was misled by Wynne's fraudulent Proof of Claim into not pursuing a fraudulent conveyance claim even though he would have done so if he had not been misled by Wynne.

WHEREFORE the granting of the Motion for Relief from Stay by this Court would allow Wynne to complete a fraudulent scheme to obtain Ms. Foster's property for nothing and this Court should not enter such an order.

### B. THE FORECLOSURE SALE IS VOID.

#### (1) THE AUGUST 23, 2006 NOTE WAS VOID AB INITIO AND THE FORECLOSURE SALE TO ENFORCE THE NOTE IS ALSO VOID.

33. This Court should deny the Motion for Relief from Stay because the foreclosure sale was void. The foreclosure sale was void because it was an action to enforce the August 23, 2006 Deed of Trust, which secured the August 23, 2006 Note, but the Note

itself is void. The foundation of Wynne's claim to Ms. Foster's property is the void note.

34. The Note is invalid under Virginia contract law.

   (a) The Note was not a bargained-for exchange.

      (1) A contract that is not supported by consideration is not a true bargain and is void. Although a "peppercorn" may be adequate consideration under Virginia law if actually bargained, no consideration is a sign that the contract was not based on an actual bargain.

      (2) The utter lack of consideration here was not actually bargained-for. On the morning of August 23, 2006, Ms. Foster was released from jail. She was broke. She immediately went to see Wynne, her boyfriend, because he was her boyfriend and she wanted to see him and because he owed her $100.00 for feeding his horses. Wynne was himself incarcerated at the time and was allowed to go to work each day on work release, so he had not been allowed to see Ms. Foster while she was in jail. According to Wynne, Ms. Foster signed a Note and Deed of Trust, promising to pay him $40,000.00 during that visit. According to Wynne's version of the facts, he had apparently prepared the papers while Ms. Foster was in jail and that she had not seen or discussed with him prior to that morning.

      (3) The contract was not a bargained-for exchange, which is evidenced by the lack of consideration for Wynne's windfall. See Restatement (Second) of Contracts § 71(1)(1981)("To constitute consideration, a performance or a return promise must

be bargained for"). Thus, the Note was <u>void ab initio</u> and the foreclosure, which was merely an action to enforce the void contract, is also void.

(b) The Note recited false consideration.

(1) Although a peppercorn or "tomtit" may be adequate consideration, the consideration for the contract must be correctly stated in the contract. The consideration may not be falsely stated or be a sham. Restatement (Second) of Contracts § 79(1981), comment d. Sham consideration may not support a valid contract. <u>Id.</u>

(2) Here, the contract stated that Ms. Foster promised to pay Wynne $40,000.00 in exchange "For Value Received." The value she received was not the stated $40,000.00; instead she received nothing.

(3) The Note was void because it contained a false recital of consideration. The Note was <u>void ab initio</u> and the foreclosure, which was merely an action to enforce the void contract, is also void.

### (2) THE FORECLOSURE SALE IS VOID AS A FRAUDULENT TRANSFER UNDER VIRGINIA LAW.

35. Peter Sackett, the trustee acting under the August 23, 2006 Deed of Trust, fraudulently conveyed Ms. Foster's property at 2232 Ridgewood Drive to Wynne in violation of Va.Code § 55-80 and Va. Code § 55-81.

(a) The Trustee's Deed was a void transfer pursuant to Va.Code § 55-80.

(1) The Trustee's Deed was a transfer from Sackett to

Wynne of an interest in property; and

(2) The transfer was made with the intent by Wynne (who falsely told Sackett that he was owed $40,000.00 by Foster) to delay, hinder or defraud creditors or other persons, specifically Ms. Foster, of property to which Foster was lawfully entitled.

(b) The Trustee's Deed was a void transfer pursuant to Va.Code § 55-81.

(1) The Trustee's Deed was a transfer from Sackett to Wynne of an interest in Ms. Foster's property; and

(2) Ms. Foster was insolvent at the time of the transfer;

(3) The consideration for the transfer of the Trustee's Deed ($0.00) was not of equal value to the property obtained by Wynne in the transfer ($40,000.00).

36. Ms. Foster has filed an adversary proceeding in this Court to avoid under Virginia law the fraudulent transfer of her property by the sham Trustee's Deed.[2]

WHEREFORE the granting of the Motion for Relief from Stay by

---

[2] Ms. Foster prays that this Court will note that the Supreme Court's decision in BFP v. Resolution Trust Co., 511 U.S. 531, 545 (1994) is not applicable here. BFP related to an attack on a foreclosure sale under 11 U.S.C. § 548 and the debtor's adversary proceeding is not brought under that statute. Moreover, the Supreme Court wrote that "[w]e deem, as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," is the price in fact received at the foreclosure sale, <u>so long as all the requirements of the state's foreclosure law have been complied with</u>" (emphasis added), and the Ms. Foster has attacked the foreclosure sale strictly on state law grounds.

this Court would allow Wynne to complete a fraudulent scheme to obtain Ms. Foster's property for nothing and this Court should not enter such an order.

### (3) THE FORECLOSURE SALE IS VOID DUE TO A GROSSLY INADEQUATE SALES PRICE.

37. The foreclose sale is void because Ms. Foster's property was sold by Peter Sackett, the trustee who sold the property pursuant to the Deed of Trust, for a grossly inadequate price.

38. Virginia law requires that a foreclosure sale is void[3] if the sale is for a price so inadequate "that it shocks the conscience of the chancellor."[4] Here, Wynne "bid in" the property for the amount of his debt, which was $0.00. The property was worth $200,000.00. Wynne paid a price equal to 0% of the value of the property. The price of this sale was so inadequate as to have been merely a sham price. The sale price here was plainly inadequate; the only way to conclude that the sale price was not "so inadequate" "that it shocks the conscience of the chancellor" is to conclude that the rule of unconscionability is not valid but is itself a sham.

WHEREFORE the granting of the Motion for Relief from Stay by this Court would allow Wynne to complete a fraudulent scheme to obtain Ms. Foster's property for nothing and this Court should

---

[3] Linney v. Normoyle, 145 Va. 589, 592, 134 S.E. 554, 554 (1926)("the conveyance" "was voidable in a court of equity, and would have been decreed void at the prayer of M. F. Normoyle, the complainant," but Normoyle did not ask that the sale be decreed void).

[4] Id. at 595, 134 S.E. at 555.

not enter such an order.

### (4) THE FORECLOSURE SALE IS VOID AS A FRAUDULENT TRANSFER UNDER BANKRUPTCY LAW.

39. The foreclosure sale was void under 11 U.S.C. § 548. Peter Sackett, the trustee acting under the August 23, 2006 Deed of Trust, fraudulently conveyed Ms. Foster's property at 2232 Ridgewood Drive to Wynne in violation of 11 U.S.C. § 548(a)(1).

34. The Supreme Court's decision in BFP v. Resolution Trust Co.,[5] is not applicable to this claim. BFP related to an attack on a foreclosure sale under 11 U.S.C. § 548 and Ms. Foster's adversary proceeding is not brought under that statute. Moreover, the Supreme Court wrote that "[w]e deem, as the law has always deemed, that a fair and proper price, or a "reasonably equivalent value," is the price in fact received at the foreclosure sale, so long as all the requirements of the state's foreclosure law have been complied with" (emphasis added). The Ninth Circuit has held, after BFP that: "Gross inadequacy of price is a ground for setting aside the foreclosure, under BFP, if state law so provides, but it is not a federal standard independent of state law enabling a bankruptcy court to set aside a foreclosure sale."[6] Thus, if state law allows, as Virginia law does, a foreclosure sale to be set aside when the price shocks the conscience, a bankruptcy court may apply that standard of

---

[5] 511 U.S. 531, 545 (1994)

[6] Lindsay v. Beneficial Reinsurance Co., 59 F.3d 942, 948 (9th Cir. 1995), cert. denied, 516 U.S. 1074, 116 S.Ct. 778, 133 L.Ed.2d 730 (1996).

value to determine whether a foreclosure sale is a fraudulent conveyance under 11 U.S.C. § 548(a)(1).[7]

40. The foreclosure sale by Sackett was avoidable pursuant to 11 U.S.C. § 548(a)(1).

  (a) The transfer was a transfer of an interest in Ms. Foster's property;

  (b) The transfer was made within two years of the filing of the petition in this case;

  (c) The transfer was made for less than a reasonably equivalent value, as defined by Virginia law;

  (d) Ms. Foster was insolvent at the time the transfer was made.

WHEREFORE the granting of the Motion for Relief from Stay by this Court would allow Wynne to complete a fraudulent scheme to obtain Ms. Foster's property for nothing and this Court should not enter such an order.

### III. THE COURT SHOULD DENY THE MOTION FOR RELIEF STAY BY EITHER ADJUDICATING THE MERITS OF MS. FOSTER'S CLAIM OR BY ADJUDICATING HER CLAIMS UNDER THE STANDARD OF A PRELIMINARY INJUNCTION.

41. Defenses involving the validity of the moving creditor's asserted lien or claim for relief may be considered by the Bankruptcy Court in exercising its discretion in connection with the lift-stay hearing.[8] Congress explained the relationship

---

[7] Murphy v. Town of Harrison, 331 B.R. 107, 127 (Bankr. S.D.N.Y. 2005).

[8] United Companies Financinal Corp v. Brantley, 6 B.R. 178, 185 (Bankr. N.D. Fla. 1980); see also In re Bialac, 694 F.2d 625

between motions for relief from stay and claims that the debtor has against the movant. Normally, a hearing on a motion for relief from stay is not "the appropriate time at which to bring in other issues, such as counterclaims against the creditor or largely unrelated matters."[9] However, the Bankruptcy Court may consider "evidence on the existence of claims which the court may consider in exercising its discretion," including evidence on the amount, extent, and validity of the movant's claim. The debtor is not prohibited from presenting evidence on the existence of collateral claims at a hearing on a motion for relief from stay; the Senate report stated that "[w]hat is precluded is a determination of such collateral claims on the merits at the hearing."[10]

42. Ms. Foster's claims are "direct defenses--ones that go to the heart of the creditor's claim." As direct defenses, the Court should determine the merits of her defenses at the hearing on the motion for relief from stay.[11]

43. When a debtor raises "extraneous grounds" as a defense to a motion for relief from the stay, the Bankruptcy Court should not adjudicate the extraneous grounds on their merits, but simply

---

(9th Cir. 1982).

[9] H.R. Rep. No. 595, 95th Cong., 1st Sess. 344 (1977); In re Vitreous Steel Products Co., 911 F.2d 1223, 1232 (7th Cir. 1990); In re Booth, 289 B.R. 665, 667-668 (Bankr. N.D. Ill. 2003).

[10] Id..

[11] See Drake v. Franklin Equipment Co., 416 B.R. 483 (E.D. Va. 2009).

determine whether there is a "colorable" claim that should be decided on the merits before relief from the stay is granted.[12] When a debtor raises extraneous grounds as a defense to a motion for relief from stay, the Bankruptcy Court should consider those grounds in the manner appropriate to an equivalent request for a restraining order or preliminary injunction.

43. If the Court considers Ms. Foster's defense to the Motion for Relief from Stay as "extraneous grounds" rather than "direct defenses," then her defense satisfies the elements of a Preliminary Injunction as set forth in The Real Truth About Obama, Inc. v. Federal Election Commission.[13]

(a) Ms. Foster is likely to succeed on the merits of her claim that Wynne did not loan her any money on August 23, 2006. The motion for relief from stay should not be granted until she has had a hearing on the merits of her claim.

(b) Ms. Foster is likely to suffer irreparable harm in the absence of preliminary relief because Wynne would regain possession of the property, Ms. Foster would be ejected from her home, Ms. Foster would lose her tenants and the rental income that she gains from the property. Wynne would be free, in the

---

[12] Grella v. Salem Five Cent Savings Bank, 42 F.3d 26, 32 (1st Cir. 1994)(stating that proceedings under § 362 of the Code "do not involve a full adjudication on the merits of claims, defenses, or counterclaims, but simply a determination as to whether a creditor has a colorable claim to property of the estate"); In re Vitreous Steel Products Co., 911 F.2d at 1232 (hearings to determine whether stay should be lifted are meant to be summary in character).

[13] 575 F.3d 342 (4th Cir. 2009).

absence of an injunction, to convey the property to a bona fide third-party purchaser for value, which would render it impossible for Ms. Foster to recover the property. The harm to Ms. Foster would be irreparable by a legal remedy.

(c) The balance of equities tips in Ms. Foster's favor. Ms. Foster will lose her property if an injunction is not granted pending a hearing on the merits of her claim, rendering a later hearing on the merits moot. This is balanced against no harm to Wynne, who has perpetrated a fraud upon this Court, upon Ms. Foster, and upon Ms. Foster's creditors. Wynne is fully protected against delay in a full hearing on the merits of Ms. Foster's claim by a $20,500.00 cash bond posted Mr. Foster and by an equity cushion of $200,000.00. The balance of equities weighs heavily in favor Ms. Foster and in favor of delaying a ruling on the motion for relief from stay pending a ruling on the merits of her claim.

(d) An injunction is in the public interest. Wynne has perpetrated a fraud on the Circuit Court of the City of Lynchburg, the Commissioner of Accounts to whom the accounting of the foreclosure sale was filed, the Trustee in Ms. Foster's 2007 bankruptcy, and upon this Court in this proceeding. If an injunction is not granted, Wynne will have successfully completed his fraudulent scheme by obtaining possession of Ms. Foster's home. The public interest can only be protected by denying the motion for relief until the merits of Ms. Foster's claim are adjudicated.

## IV. CONCLUSION

There are three reasons to deny the motion for relief from stay.

1. <u>THERE IS EQUITY IN THE PROPERTY:</u> There is $163,000.00 equity in the property that the movant seeks to obtain.

2. <u>THE PROPERTY IS NECESSARY FOR THE REORGANIZATION OF THE DEBTOR:</u> The property is Ms. Foster's home and she obtains rental income from renting rooms in the house, so the property is necessary for Ms. Foster's reorganization.

3. <u>THERE IS NO EQUITABLE "CAUSE" TO GRANT RELIEF FROM THE STAY:</u> The movant's claim to the property is a fraudulent sham: he only loaned Ms. Foster no money on August 23, 2006, but he is attempting to obtain possession of a house worth $200,000.00 and a cash bond of $20,500.00. The Deed of Trust and the Trustee's Deed that are the technical basis for his claim are fraudulent and Ms. Foster is entitled to a hearing on the merits of her adversary proceeding (or at least a hearing on whether preliminary injunctive relief is justified) to avoid the sham transactions before this Court grants the movant the relief that he seeks.

Respectfully Submitted,

KAREN FOSTER

By: _____

Gary M. Bowman, Esq.
VSB No. 28866
2728 Colonial Ave., Ste. 100
Roanoke, Virginia 24015
Tel: (540) 343-1173
Fax: (540) 343-1157

## VERIFICATION

I have read the foregoing and affirm that the facts recited herein are true and correct to the best of my knowledge and belief. I affirm that I have carefully reviewed each and every paragraph of the foregoing, that I have initialed each paragraph and that I have instructed my attorney to file this based upon this verification that the facts contained herein are accurate.

Karen M. Foster

4-11-2012
Date

## CERTIFICATE OF SERVICE

I, Gary M. Bowman, do hereby certify that a true and correct copy of this Response was served through the ECF system to William F. Schneider, Esq. on April 11, 2012.

GARY M. BOWMAN